| ¡.PETTIGREW, J.
In this case, the Louisiana Gaming Control Board (“Board”) appeals the trial court’s decision to vacate a December 29, 1998 resolution whereby the Board conditionally approved the transfer of an interest in a riverboat gaming licensee to entities that had not yet applied for licensure or been found suitable under the Louisiana Riverboat Economic Development and Gaming Control Act. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
The Belle of Orleans, L.L.C. (“Belle”) is licensed to operate a riverboat gaming vessel on Lake Ponchartrain in New Orleans, Louisiana. Belle consists of two partners, Metro Riverboats Associates, Inc. (“Metro”), which holds a 50.1 percent interest in Belle, and Bally’s Louisiana, Inc. (“Bally’s”), which holds a 49.9 percent interest in Belle. Hilton Hotels Corporation (“Hilton”) is the parent company to Bally’s.
In November of 1998, Hilton filed a petition with the Board requesting approval of a spin-off of its gaming assets to a newly-formed entity, Park Place Entertainment Corporation (“Park Place”), and a proposed merger between Park Place and Grand Casinos, Inc. (“Grand”). Metro filed a petition contesting Hilton’s request, and the matter was scheduled for hearing on December 29,1998.
Metro filed various public records requests with the Board, the Louisiana State Police, and the Attorney General requesting any documents related to the proposed spin-off and merger. After receiving “no information whatsoever upon which to base any examination or determination of this proposed transfer,” Metro filed a motion to continue the December 29, 1998 hearing. Metro asserted that “[a]s a result of the Board’s expedited and extraordinary scheduling of the hearing on Hilton’s Petition, not only is Metro being deprived of the evidentiary hearing on contested matters before a hearing officer pursuant to the Administrative Procedure Act, but Metro is being deprived of any meaningful hearing on this disputed matter.” (Emphasis in original.) In the alternative, Metro moved for the recusal of the Board’s Chairman, the Honorable Hillary Crain, alleging that the Chairman had engaged in ex parte communications with representatives of Hilton regarding its petition. After hearing argument from the parties, the Board |3unanimousIy rejected both of Metro’s motions and proceeded to consider Hilton’s petition and Metro’s opposition thereto. The Board ultimately voted to conditionally approve Hilton’s petition. According to the resolution that was adopted by the Board on December *696 29, 1998, the spin-off and merger were subject to the following conditions:
A. That within 30 days of this conditional approval Park [Place] submit to the Division a Part A application and all attachments required by the Division;
B. That Park [Place] be found suitable;
C. That Park [Place] expressly acknowledge through signature on this resolution by an authorized agent that Park [Place] accepts and assumes continuing responsibility for any unsuitable conduct by Hilton Hotels Corporation, its agents or employees occurring prior to this spin[-]off and merger which in any manner affects the continuing suitability of the licensee, Belle of Orleans, L.L.C.[;]
D. That Park [Place], through signature on this resolution by a duly authorized agent, acknowledge and accept all regulatory obligations of Hilton Hotels Corporation (financial or otherwise) with reference to the licensee, Belle of Orleans, L.L.C.[;]
E. That the approval remain conditional until the renewal of Belle of Orleans, L.L.C. receives final Board approval.
On January 5, 1999, Metro filed a Petition Appealing Decision of the Louisiana Gaming Control Board praying that the December 29, 1998 resolution by the Board be reversed and remanded and that the Chairman of the Board be ordered to recuse himself from any future proceedings regarding Hilton’s petition. After a hearing on January 26, 1999, the trial court opined that the Board was without authority to execute the December 29, 1998 resolution. The judgment signed by the court on January 27, 1999, contained the following language:
[T]he December 29, 1998, resolution of the [Board] is hereby vacated and of no force and effect. It is further ORDERED that after [Park Place] has filed its application pursuant to R.S. 27:73 and the Louisiana State Police has concluded its suitability investigation regarding the parties involved in the [Hilton] spin-off of its gaming assets to [Park Place] and the subsequent merger with [Grand], the [Board] shall conduct a public hearing to determine whether the said spin-off and merger should be approved.
Lit is from this judgment that the Board has appealed, assigning the following specifications of error:
1. The district court erred in hearing the matter styled as an “appeal” from a resolution of the Louisiana Gaming Control Board conditionally approving a transaction or transfer of interest.
2. The district court erred in vacating the December 29, 1998 resolution of the Louisiana Gaming Control Board and decreeing it to be of no force and effect.
3. The district court erred in ordering the Louisiana Gaming Control Board to determine whether the spin-off and merger (transaction), should be approved at a public hearing, rather than at a public meeting of the Board.
In addition to the extensive arguments on these issues presented by the parties, Bally’s, Hilton, and Park Place have filed an amicus curiae brief supporting the Board’s position on the validity of the resolution at issue.
ASSIGNMENT OF ERROR NUMBER ONE
In its first assignment of error, the Board argues that not only does Metro lack the necessary standing to contest the resolution at issue, but also that the matter is not subject to judicial review or appeal. The Board asserts that because there was no “adjudication” in this matter, there was no administrative record to be considered and the district court did not have jurisdiction to hear the “appeal” filed *697 by Metro.[2] Based on our review of the record and the applicable statutory law, we find no merit to the Board’s argument in this regard.
According to La. R.S. 49:964 A, a person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under the Louisiana Administrative Procedures Act (“LAPA”). An “adjudication” is defined in La. R.S. 49:951(1) as an “agency process for the formulation of a decision or order.” A “decision” or “order” is defined, in pertinent part, in La. R.S. 49:951(3) as “the whole or any |Bpart of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing.”
The Louisiana Supreme Court recently summarized the application of the LAPA as follows:
LAPA provides that an adjudication is a proceeding resulting in an order or decision. For purposes of the act, a decision or order is a disposition required by the constitution or statute to be made only after notice and a hearing. Therefore, unless the constitution or statutes requires a hearing, an agency disposition is not a “decision” or “order” as defined for purposes of LAPA. Moreover, unless a proceeding results in a decision or order, it is does not meet the definition of an adjudication as provided in LAPA. Accordingly, it is evident that an adjudication for purposes of LAPA means that an agency proceeding has occurred that results in a disposition which is preceded by notice and a hearing as required by the constitution or statute. It is clear that unless a statute or the constitution requires a hearing and notice, an agency action is not an adjudication; therefore, the provisions of LAPA are not triggered in these instances.
Hayden v. New Orleans Baton Rouge Steamship Pilots Fee Commission, 97-1239, p. 13 (La.1/21/98), 707 So.2d 3, 10 (emphasis in original).
Applying this criteria to the present case, it is readily apparent that the provisions of the LAPA are applicable. When Hilton filed its petition regarding the spin-off of its gaming assets to Park Place and the proposed merger with Grand, Metro promptly filed an opposition to the petition and requested that the matter be set for hearing in accordance with the LAPA. Rather than scheduling an administrative hearing, the Board chose to consider the matter at a meeting held on December 29, 1998. By letter dated December 22, 1998, Metro was notified of the meeting and advised that its opposition would be considered at the meeting along with Hilton’s petition for approval.
The right to an administrative hearing in this case is established by La. R.S. 27:25 B(l), which provides, “[a]ny matter which is disputed or contested shall be heard by a hearing officer in a public hearing conducted in accordance with the adjudication provisions of the Administrative Procedure Act.” On appeal, the Board contends that the “conditional approval of the ‘spin-off and ‘merger’ was given by the Board at a public meeting,” and that its “action of conditional approval in the context of a public meeting does not in any way convert the matter into an administrative hearing, or invoke the procedures of the APA, La. R.S. 49:950 et seq.” We disagree. Regardless of what | (¡semantics the Board chooses to use, the December 29, 1998 meeting resulted in a “decision” or “order” as defined by the LAPA. Accordingly, there was an adjudication, and pursuant to the provisions of La. R.S. 49:964, the trial court had jurisdiction to review the Board’s resolution.
*698 ASSIGNMENT OF ERRORS NUMBERS TWO AND THREE
In these assignments of error, the Board asserts that they are not prohibited from conditionally approving a transfer of an interest in a licensee. The Board further contends that although a public hearing is required prior to the initial licen-sure, no hearing is required for transfers of interests. The Board argues that the trial court “was confused over the difference between a license and a transfer [of an interest in a licensee.]” According to the Board, La. R.S. 27:73, which sets forth the rules regarding public hearings, only “applies to the initial license to conduct riverboat operations.”
Metro argues that based on the gaming regulations set forth in La. Admin. Code 42:XIII.101 et seq., the transfer of interest proposed by Hilton could not take place without Park Place first submitting the necessary applications and obtaining approval from the Louisiana Riverboat Gaming Enforcement Division of the Office of State Police (“division”). We agree with Metro and conclude that the trial court was correct in its judgment vacating the resolution and ordering that a public hearing be conducted to determine whether the spin-off and merger should be approved.
Pursuant to La. R.S. 27:68 E, “any person acquiring five percent or more in the total outstanding shares of a licensee or a five percent or more economic interest in a licensee is required to obtain the division’s approval prior to such transaction.” (Emphasis added.) When this statute is read in conjunction with the gaming regulations set forth in the Louisiana Administrative Code, it becomes quite clear that an interest in a licensee cannot be acquired without application, investigation and a finding of suitability.
| ./Transfers of interests in licensees and permittees are addressed in La. Admin. Code 42:XIII.2501, et seq. These regulations provide, in pertinent part, as follows:
§ 2501. Transfers in General
[[Image here]]
A. The transfer of a license, permit, or of an application for a license or permit is prohibited. The transfer of an interest in a license, permit, or of an application for a license or permit is also prohibited.
C. No person shall ... transfer, convey or acquire, in any manner whatsoever, any of the following interests without prior written approval of the division and notice to the [Louisiana Riverboat Gaming Commission (“commission”) ] by all persons involved in the transaction:
1. an economic interest of 5 percent or more in any licensee or permittee;
2. an ownership interest of 5 percent or more in any licensee or permittee other than a corporation;
3. an economic interest of 5 percent or more in any person required to meet the qualification requirements or suitability requirements of the act.
[[Image here]]
§ 2503. Requirements of Full Disclosure
A. No person shall transfer or convey in any manner whatsoever any interest of any sort, in or to any person required to meet the qualification requirements and/or suitability requirements of the act, by any person acting as an agent, trustee or other representative capacity for or on behalf of another person without first having fully disclosed all facts pertaining to such representation to the division and the commission.
[[Image here]]
D. All persons required to obtain approval under this Chapter must meet the same qualification requirements and suitability requirements as a licensee or permittee as the case may be.
[[Image here]]
§ 2505. Prior Approval of Transfers Required
A. No transfer of any interest for which prior approval is required pursu *699 ant to this Chapter may be completed unless the transfer and the transferee have been approved by the division in writing.
[[Image here]]
§ 2509. Transfer of Economic Interest to Nonlicensee or Nonpermittee
A. No person who owns an economic interest of 5 percent or more in any licensee or permittee shall in any manner whatsoever, transfer that | seconomic interest to any person who is not then a licensee, permittee or person who has met the qualification requirements of the act.... None of the transfers described in this subsection shall be effective for any purpose until the proposed transferee has applied for and obtained all licenses and permits required by the act and until the transferee has been approved by the division.
[[Image here]]
C. The application for approval of the transfer together with any license or permit applications must be filed at the same time with the division. All applicable fees must be paid at the time the applications are filed.
In this case, Hilton petitioned the Board for approval of the spin-off of its gaming assets, which included a 49.9 percent interest in Belle, to Park Place, a “newly-formed entity.” There is no evidence in the record that Park Place filed any applications with the division, regarding suitability or otherwise, prior to the Board’s conditional approval of Hilton’s request at the December 29, 1998 meeting. In fact, at a January 19, 1999 meeting of the Board, Hilton’s counsel stated as follows with regard to this very issue:
On the 29th of December this Board approved the [Hilton] spin[-]off to Park Place. Park Place didn’t file [a suitability application] prior to that ... because they weren’t in existence. They weren’t a license holder. As you know, one of the conditions to the spin[-]off was that Park Place and its directors file their suitability applications within 30 days. We’re going to do that. The state police has nothing to review right now because we have not filed the suitability applications because we had 30 days to do it.
During the hearing on January 26, 1999, the trial court expressed its concern regarding the dangerous precedent being set by the Board.
The Court: What I’m interested in is, do you think the legislature intends that if a person buys an interest in some entity that has a license, they can thereby circumvent the requirement of a public hearing which was to protect the public from illicit things that happened with gambling and that somebody could do indirectly what they could not do directly?
The court also recognized that while in the past, the Board had strictly interpreted the gaming statutes and regulations, the Board was now becoming far more liberal and lenient in its interpretation of these very statutes and regulations.
The Court: Well, I’m missing something. In the past you have insisted that everyone conform to the letter of the law. The Gaming Control Commission has gone so far as to, in my opinion, get the law changed on first offender pardons. The Gaming Control Commission has been picky, picky, picky about regulations. Now we have a preappro-val prior to an investigation, and we’re saying these rules don’t apply. We can have some hearings if we want to. And I’m missing the pickiness that we’ve had in the |9past on following in order the way things should go. How does this happen?
After listening to argument by the parties, the court rendered judgment vacating the Board’s resolution and ordered that after the investigation into Park Place was complete, the Board was to hold a public hearing to determine whether the spin-off and merger should be approved. The court issued oral reasons for his judgment as follows:
*700 This is an appeal from a resolution by the [Board on] December 29, 1998, stating that it gives conditional approval provided within 30 days an application is made to the division. The appeal question is, can the [Board] give conditional approval subject to an application being made? It’s this court’s reading of the statute, R.S. 27:68(E), and it says, after a license is granted, any person acquiring five percent or more in the total outstanding shares of a licensee or five percent or more economic interest in a licensee is required to obtain the division’s approval prior to such transaction.
The court believes prior means pri- or.... R.S. 27:73(A) says, at the conclusion of the division’s investigation, the division shall hold a public hearing to determine if the provisions of this chapter have been met, and if the issuance of a gaming license to the applicant is in the best interest of the State and consistent with the intent of the legislature as expressed in this chapter.
This court believes that 27:73 applies to transactions under 27:68. Otherwise, an entity could do indirectly what it could not do directly. An entity that had something the public might wish to say about [sic] could avoid the public hearing by simply buying an interest in someone that already had a license.
Therefore, the proper procedure is to seek approval from the division prior to the transaction. At the conclusion of the division’s investigation, the [Board] should have a public hearing to determine if the provisions of the chapter have been met ....
Based on our review of the record and our interpretation of the applicable statutes and regulations, we agree with the trial court’s decision. The Board is without authority to issue conditional approval of a transfer of interest in a licensee. The legislature’s intent that the gaming industry be strictly regulated is clearly set forth in La. R.S. 27:2. As alluded to by the trial court, a very dangerous precedent would be set if the Board’s December 29, 1998 resolution is not vacated. The Board’s actions in this instance are certainly not indicative of a strict adherence to the gaming laws. If this type of transaction is allowed to occur, the policies and regulations that were established by the legislature “to protect the general welfare of the state’s people by keeping the state free from criminal and corrupt elements” will be rendered meaningless. See La. R.S. 27:2. |10The gaming industry, which already operates under a cloud of suspicion, could become even more inundated with “criminal and corrupt elements” as these entities would be able to do indirectly what they could not do directly, i.e., acquire an interest in a licensee without first submitting an application and being found suitable to hold such an interest. The Board cannot be allowed to circumvent the policies and procedures that were established by the legislature to prevent this very type of behavior from occurring.
DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects. Appeal costs in the amount of $3,409.28 are assessed against defendant-appellant, the Louisiana Gaming Control Board.
AFFIRMED.

. As correctly noted by the Board in its brief to this court, Metro offered numerous exhibits into evidence at the January 26, 1999 hearing. Over the objection of the Board, this evidence was accepted by the trial court and is part of the record on appeal.