774 So.2d 1193 (2000)
METRO RIVERBOAT ASSOCIATES, INC.
v.
The LOUISIANA GAMING CONTROL BOARD.
No. 99 CA 0863.
Court of Appeal of Louisiana, First Circuit.
December 20, 2000.
*1195 Before: CARTER, C.J., LeBLANC, FOIL, GONZALES, FOGG, PARRO, FITZSIMMONS, KUHN, GUIDRY, WEIMER, and PETTIGREW, JJ.

ON APPLICATION FOR REHEARING
GONZALES, J.
This matter was originally decided by this court as an appeal by the Louisiana Gaming Control Board (Board) from the district court decision on judicial review of the Board's conditional approval of a transfer of an interest in a riverboat gaming license. The petition for review was filed in the district court by Metro Riverboat Associates, Inc. (Metro), a partner in the Belle of Orleans, L.L.C. (Belle), the entity licensed to operate a riverboat gaming vessel on Lake Ponchartrain in New Orleans. Metro claimed that its co-owner in Belle[1] should not have received a conditional approval from the Board to transfer *1196 its interest to a third party, Park Place Entertainment Corporation (Park Place), absent a public hearing and prior compliance with certain provisions of the Louisiana Gaming Control Law, La. R.S. 27:1 et seq. (Gaming Law). The district court vacated the decision of the Board and ordered the Board to conduct a public hearing on the issues after an application is submitted by Park Place pursuant to La. R.S. 27:73 and an investigation is conducted by the Louisiana State Police. In an appeal brought by the Board from the district court ruling, the original three-judge panel of this court affirmed the district court.[2] In an application for rehearing, the Board requested that the original three-judge opinion be reconsidered en banc and the decision of the district court reversed. The Board asserts that Metro was not a party to the proceeding before it, and therefore, had no standing to appeal to the district court, and, that its action was not an appealable adjudication.[3] For the reasons which follow, the rehearing application is granted.

JURISDICTION
As in any case before this court, the first issue that must be considered is whether the case is properly before the court and whether there is a basis for jurisdiction. Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La. C.C.P. art. 1. Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties or waived; a judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. La. C.C.P. arts. 3 and 925. See also Whittenberg v. Whittenberg, 97-1424 (La.App. 1 Cir. 4/8/98), 710 So.2d 1157, 1158; Johnson v. Vinson Guard Service, Inc., 577 So.2d 56, 58 (La.App. 1 Cir.1990), writ denied, 578 So.2d 915 (La.1991). This issue addresses the court's authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. Whittenberg, 710 So.2d at 1158; Tran v. Schwegmann's Giant Super Market, 609 So.2d 887, 889 (La.App. 4 Cir. 1992). See also Gravois v. Travelers Indemnity Company, 173 So.2d 550, 553 (La. App. 1 Cir.), writ denied, 247 La. 1016, 175 *1197 So.2d 301 (1965). Moreover, it is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. Renno v. Evans, 580 So.2d 945, 947 (La.App. 2 Cir. 1991). Therefore, we must nevertheless examine subject matter jurisdiction. See also Boeing Company v. Louisiana Department of Economic Development, 94-0971 (La.App. 1 Cir. 6/23/95), 657 So.2d 652, 659.
The original three-judge panel in this case ruled that the Board's December 29, 1998 resolution resulted in a "decision" or "order" as defined by the Louisiana Administrative Procedure Act (LAPA), which constituted an "adjudication," thereby giving the district court jurisdiction to review the Board's resolution under La. R.S. 49:964. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 99-0863, p. 6 (La.App. 1 Cir. 5/12/00), 761 So.2d 694. The original three-judge panel went on to affirm the district court on the merits of the appeal. Upon reconsideration of the case, this en banc panel concludes that the prior determination of this court was correct on the merits; however, we decide herein that the review should have been conducted under our supervisory jurisdiction.
In general, appellate review of administrative agency matters is governed by La. R.S. 49:964(A)(1) of the LAPA, which provides that "a person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under [the LAPA]." Judicial review is confined to the record. La. R.S. 49:964(F). Furthermore, under La. R.S. 49:964, only a "final decision or order" "in an adjudication proceeding" is appealable. "Decision" or "order" is defined by La. R.S. 49:951(3) as "the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing...." The LAPA defines "[a]djudication" as an agency process for the formulation of a decision or order. La. R.S. 49:951(1). An adjudication for purposes of the LAPA means an agency proceeding that results in a disposition that is required by constitution[4] or statute to be made after notice is given and a hearing is held. Unless the constitution or some statute requires a hearing and notice, an agency action is not an adjudication for purposes of the LAPA. Delta Bank & Trust Company v. Lassiter, 383 So.2d 330, 333 (La.1980).
The LAPA applies to all agencies unless excepted by either the LAPA itself or the constitutional provisions and statutes governing each individual agency.[5] *1198 Corbello v. Sutton, 446 So.2d 301, 303 (La. 1984). The general rule regarding applicability of laws is that the more specific governs over the more general. State in Interest of A.C., 93-1125 (La.1/27/94), 643 So.2d 719, 730, on rehearing, 93-1125 (La.10/17/94), 643 So.2d 743, cert. denied, 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995). With regard to administrative agencies, the more specific laws are those which govern the agency; these specific laws govern over the more general laws of the LAPA. Corbello, 446 So.2d at 303. The provisions of the LAPA were not intended to supercede specific provisions of other administrative acts, or to supercede the rights and remedies created under those acts. Rather, the LAPA was intended to create procedures in those instances where none existed. Corbello, 446 So.2d at 303. Where agency laws are silent, it is the function of the LAPA to fill in the gaps and to provide rules of procedure. See Liberty Mutual Insurance Company v. Louisiana Insurance Rating Commission, 96-0793 (La.App. 1 Cir. 2/14/97), 696 So.2d 1021, 1027, writs denied, 97-2069, 97-2062 (La.12/19/97), 706 So.2d 451, 452. When the agency statute upon which a litigant relies establishes a specific procedure for judicial review of the agency's action, a litigant may invoke the reviewing court's jurisdiction only by following the statutorily prescribed procedure, unless there can be found within the act a genuine legislative intent to authorize judicial review by other means. Corbello v. Sutton, 446 So.2d at 302-303. See also Loop, Inc. v. Collector of Revenue, 523 So.2d 201, 202 (La.1987) (on rehearing).
In accordance with these principles, we must first look to the statutory provisions governing the Board to determine the extent to which the LAPA applies in this case. The provisions of the Gaming Law which address appeals from actions taken by the Board relating to riverboat gaming activities are La. R.S. 27:26 and La. R.S. 27:89, which provide:
§ 26. Appeals from board
All appeals from any decision of the board shall be filed within ten days of notice of the decision in the Nineteenth Judicial District Court and shall be reviewed solely on the record. [Emphasis added.]
§ 89. Appeals from actions of the commission
Any person adversely affected by an action, order, or decision of the commission[6] may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act, except that notice of appeal shall be given to the commission and petition for appeal shall be filed with the district court within ten days of the action, order, or decision of the commission. [Emphasis added.]
A simple reading of these statutes reveals that virtually no legal structure or guidance is provided to this or any other court to consider the various procedural issues necessary for a comprehensive review of the Board's determinations. Under the literal terms of either La. R.S. 27:26 or La. R.S. 27:89, any person, at any point in the administrative process could appeal any decision of the Board. Further, these statutes allow for an appeal from any action, order, or decision of the Board. This unqualified use of the term "decision," without a requirement of finality,[7] would allow for appeals to be taken at *1199 any step in the administrative process, resulting in piecemeal appeals and an undue burden on the courts. Applied as written, La. R.S. 27:26 or La. R.S. 27:89 clearly violate the well-recognized administrative law concept of exhaustion of administrative remedies prior to judicial review. See Daily Advertiser v. Trans-La., a Division of Atmos Energy Corporation, 612 So.2d 7, 28-31 (La.1993). Such an unlimited and expansive right of appellate review would render the Board impotent and would allow the courts to micro-manage and interfere with the Board's ability to operate as part of the executive branch of our state government. Not everything an agency does must be subject to the immediate availability of judicial review in order to insure the agency's action is valid. In Re Shintech, 98-2024 (La.App. 1 Cir. 3/31/99), 734 So.2d 772, 774, writ denied, 99-1262 (La.6/25/99), 746 So.2d 601; Boeing Company, 657 So.2d at 657. A more complete violation of the separation of power doctrine of the Louisiana constitution could not be imagined.[8]
The powers of government of the state are divided into three separate branches: legislative, executive, and judicial. La. Const. art. II, § 1. Except as otherwise provided by the constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others. La. Const. art. II, § 2. See State in Interest of A.C., 643 So.2d at 731-732. No one branch of government can unduly interfere with or hinder any other branch while the latter is acting or assuming to act within the scope of the particular powers reserved to it. State in Interest of A.C., 643 So.2d at 732. To apply La. R.S. 27:26 and La. R.S. 27:89 strictly as written would allow the judiciary to encroach upon the powers reserved to the executive branch, and to that extent, La. R.S. 27:26 and La. R.S. 27:89 are unconstitutional. See Knights of Columbus, Chapter No. 2409 v. Louisiana Department of Public Safety and Corrections, 548 So.2d 936, 939 (La. 1989); LaBauve v. Louisiana Wildlife and Fisheries Commission, 289 So.2d 150, 151 (La.1974).
However, in construing La. R.S. 27:26 and La. R.S. 27:89, we are guided by certain fundamental principles of statutory interpretation. Initially, we note that an act of the legislature is presumed to be legal until it is shown to be unconstitutional, and that in construing statutes, courts must endeavor to give an interpretation that will give a statute effectiveness and purpose, rather than one which renders a statute meaningless. Johnson v. Sewerage District No. 2 of Caddo Parish, 239 La. 840, 120 So.2d 262, 268 (1960); Lachney v. Motor Parts and Bearing Supply, Inc., 357 So.2d 1277, 1284 (La.App. 3 Cir.1978). Further, if a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional, we must adopt the interpretation which will maintain its constitutionality. Hondroulis v. Schuhmacher, 553 So.2d 398, 416 (La.1989) (on rehearing). Courts have a duty to construe statutes in a constitutional manner, and in this case, to do so, it is necessary to interpret these statutes in relation to other laws. Laws on *1200 the same subject matter must be interpreted in reference to each other. La. C.C. art. 13. The LAPA, although not specific to gaming, is a legislative pronouncement regarding appeals from administrative agencies that applies to all agencies of the state unless specifically excluded by statute or jurisprudence. La. R.S. 49:951(2), 962, 962.1, 963, 964, and 967. As previously noted, where agency laws are silent, the LAPA fills in the gaps and provides rules of procedure. By interpreting La. R.S. 27:26 and La. R.S. 27:89 in pari materia with the LAPA, these statutes can be construed in a meaningful and constitutional manner.
The Constitution of Louisiana in Article V, Section 16(B) authorizes the legislature to create appellate jurisdiction in the district court; La. R.S. 27:26 and La. R.S. 27:89 create that appellate jurisdiction with respect to the Board in this case. Thus, the Nineteenth Judicial District Court is sitting as an appellate court when it reviews decisions of the Gaming Board. Loop, Inc. v. Collector of Revenue, 523 So.2d 201; Matter of American Waste & Pollution Control Co., 588 So.2d 367, 371 n. 9 (La.1991). See also Boeing Company, 657 So.2d at 656. Once it is determined that the Nineteenth Judicial District Court is exercising appellate jurisdiction, statutory procedures delineating that power of review are invoked. Since we decide herein that a literal reading of the scope of appeal provided by La. R.S. 27:26 and La. R.S. 27:89 unconstitutionally encroaches on the executive branch of state government by allowing review by the judiciary of nearly every conceivable action which could be taken by the Board, these provisions must be read in conjunction with the LAPA to limit appeals from the Board as provided in the LAPA. Although the legislature made no reference to the LAPA when it enacted La. R.S. 27:26, La. R.S. 27:89 directs that appeals of the Board are "in accordance with the provisions of the Administrative Procedure Act."[9] Thus, we resolve the ambiguity between the seemingly unlimited right to appeal afforded by La. R.S. 27:26 and the limited right to appeal inferred by the reference to the LAPA made by La. R.S. 27:89, by interpreting these provisions to incorporate the LAPA limitation of appeals to final decisions or orders resulting from adjudications. Such a reading makes sense of Sections 26 and 89 and removes the unconstitutional aspects.
Assessing the availability of appeal from the Board's action, in this case, using the criteria of the LAPA, we see the Board's passage of the resolution in question was not the final act required to approve a transfer of an interest by a licensee. Both sides to this case acknowledge that other steps were necessary. The point of contention between the parties involved is the sequence of the approval process. Under our ruling herein, an appeal can be taken only from a final decision of the Board. Because the action of the Board in this matter was not final, it was not an appealable judgment over which the district court had jurisdiction. Consequently, the district court was without authority to review the matter on appeal. Therefore, we vacate the decision of the district court rendered in its appellate capacity, and dismiss the appeal.
This court was presented with both an appeal and an application for supervisory review in this matter; however, the Board's writ application was denied on the basis that the action below was a final judgment. Although the district court had supervisory jurisdiction over the case, no writ of review was sought in that court.[10] *1201 See In Re Shintech, 734 So.2d at 774. While a remand for exercise of the district court's supervisory jurisdiction is proper, we choose instead to accept this case under our supervisory jurisdiction. We now consider the merits of the case based on the record filed with the court.[11]
On the merits, the issues presented for determination include: (1) whether the December 29, 1998 resolution of the Board was properly vacated as an improper conditional approval, and (2) whether the Board should be required to conduct a public hearing prior to approving the proposed spin-off and merger between Bally's and Park Place.

CONDITIONAL APPROVAL
The laws governing the transfer of an ownership interest in a licensee or permittee envision a process begun by application, along with submission and disclosure of requisite information, followed by an investigation and hearing stage, culminating in an approval or denial of the application by the Board, and finally resulting in the transfer of the interest and subsequent assumption of the powers and duties of ownership by the transferee. This conclusion is warranted by looking first at La. R.S. 27:68(E), which provides:
After a license is granted, any person acquiring five percent or more in the total outstanding shares of a licensee or a five percent or more economic interest in a licensee is required to obtain the division's approval prior to such transaction. Failure to obtain division approval of a transfer is grounds for license revocation. [Emphasis added.]
The agency regulations on gaming reiterate the ban on the transfer of an economic or ownership interest of five percent or more in a licensee or permittee "without prior written approval of the division...."[12] 42 La. Admin. Code, Part XIII, § 2501(C). Any person seeking an approval as required by § 2501 is required to comply with the other provisions of the Chapter (Transfers of Interest in Licensees and Permittees...) unless a waiver is applied for and granted. 42 La. Admin. Code, Part XIII, § 2501(F). All persons required to obtain approval under the transfer chapter "must meet the same qualification requirements and suitability requirements as a licensee or permittee...." 42 La. Admin. Code, Part XIII, § 2503(D). Further, a transfer by a licensee or permittee to a person who is not then a licensee, permittee or person who has met the qualification requirements of the act is prohibited by 42 La. Admin. Code, Part XIII, § 2509(A), which also provides. "None of the transfers described in this subsection shall be effective for any purpose until the proposed transferee has applied for and obtained all licenses and permits required by the act and until the transferee has been approved by the division." Obviously, this regulatory framework contemplates compliance with all requirements in advance of an approval by the Board.
*1202 However, regulations exist which allow a proposed transfer to take effect prior to complete compliance with all of the requirements of the transfer chapter. See 42 La. Admin. Code, Part XIII § 2513-2519.[13] These emergency provisions were not utilized in the instant case.
Instead, the Board chose to issue a "Resolution" which purported to "conditionally approve" the "spin-off" by Hilton of its gaming business into a new company, Park Place, and the merger/acquisition of Park Place with Grand Casino, Inc. The following conditions were imposed on the spin-off and merger:
A. That within 30 days of this conditional approval Park submit to the Division a Part A application and all attachments required by the Division;
B. That Park be found suitable;
C. That Park expressly acknowledge through signature on this resolution by an authorized agent that Park accepts and assumes continuing responsibility for any unsuitable conduct by Hilton Hotels Corporation, its agents or employees occurring prior to this spin off and merger which in any manner affects the continuing suitability of the licensee, Belle of Orleans, L.L.C.
D. That Park, through signature on this resolution by a duly authorized agent, acknowledge and accept all regulatory obligations of Hilton Hotels Corporation (financial or otherwise) with reference to the licensee, Belle of Orleans, L.L.C.
E. That the approval remain conditional until the renewal of Belle of Orleans, L.L.C. receives final Board approval.
The placement of conditions on a license or permit is authorized by La. R.S. 27:73(C), which provides that "[t]he division may, if it deems it in the best interest of the state and enters into the record the reasons, issue a license or permit to a qualified applicant subject to one or more conditions agreed to by the applicant." Also, 42 La. Admin.. Code, Part XIII, § 2503(E) provides: "The granting of an application for a transfer may be subject to any condition, limitation or restriction in the same manner as the granting of a license or permit." See also 42 La. Admin. Code, Part XIII, § 2145(C) and (D). However, these provisions authorizing the imposition of conditions on a license or permit do not provide the authority to conditionally authorize an application. The only authority to transfer an interest and/or operational authority during the pendency of the approval *1203 process appears in the emergency provisions of 42 La. Admin. Code, Part XIII, §§ 2513-2519, which were not invoked herein. The necessity for the existence of these emergency provisions support our conclusion that outside of the emergency provisions, a transferee is required to receive prior approval, as contemplated by La. R.S. 27:68(E), i.e., approval that is received in advance of the actual transfer, after prescribed requirements have been met, and before the transfer can take place.
Hilton asserts that the authority for the Board's conditional approval can be found in La. R.S. 27:68(B), which provides:
The sale, assignment, transfer, pledge, or disposition of a security or securities which represents five percent or more of the total outstanding shares issued by a corporation that holds a license is conditional and ineffective if disapproved by the division. [Emphasis added.]
Hilton argues that this provision authorizes a conditional approval of a transfer by a licensee or permittee that is effective until and unless it is subsequently disapproved. Hilton misconstrues the purpose of this paragraph. Paragraph (B) of La. R.S. 27:68 addresses the transfer of securities of a corporation that holds a license or permit, which may or may not be accomplished through the immediate and direct participation of the corporation or the transferee; i.e., brokered securities transactions. In contrast, paragraph (E) of La. R.S. 27:68 is directed toward the transferee, when it states that "any person acquiring five percent or more in the total outstanding shares of a licensee or a five percent or more economic interest in a licensee is required to obtain the division's approval prior to such transaction." (Emphasis added.) Hilton maintains that the prior approval can be conditional, as was done in the instant case. We reject such an interpretation as being contrary to the administrative regulations set forth in 42 La. Admin. Code, Part XIII, § 2501 et seq. Thus, we conclude that conditional prior approval is not authorized by the gaming provisions. Therefore, we vacate the December 29, 1998 resolution of the Board.

HEARING REQUIREMENT
The Board argues the district court erred in ordering the Board to conduct a public hearing, on remand, to determine whether the spin-off of Hilton's gaming assets to Park Place and the subsequent merger with Grand Casino, Inc., should be approved. According to the district court's ruling, the Board was to conduct the public hearing after Park Place filed an application under La. R.S. 27:73, and after the Louisiana State Police concluded a suitability investigation regarding the parties involved in the proposed spin-off and merger. On rehearing, we adopt the opinion of the original three-judge panel of this court, finding the Board is required to hold a public hearing in this matter.
Louisiana Revised Statute 27:15 sets forth the authority and responsibilities of the Board. According to La. R.S. 27:15(B)(5), the Board is required to organize and conduct hearings, as provided in La. R.S. 27:25. Any matter which is disputed or contested shall be heard by a hearing officer in a public hearing[14] in accordance with the adjudication provisions *1204 of the Administrative Procedure Act.[15] La. R.S. 27:25(B)(1). Further, La. R.S. 27:25(B)(2) and (3) set forth the minimum requirements for the hearing, which are: (1) the receipt of sworn testimony, including by deposition; (2) an opportunity for any interested party to be heard; (3) an orderly, predictable, and timely docketing system; and (4) submission of a report, containing the record of the hearing (including all submissions), findings of fact, conclusions of law, and a decision.
In the present case, after Hilton filed its petition with the Board requesting approval of the spin-off and merger, Metro filed an opposition to the petition identifying several "disputed and contested matters" and requesting that the Board hold a hearing in accordance with the LAPA. We conclude that the presentation of these disputed and contested matters activated the requirement of La. R.S. 27:25(B)(1) and necessitated that a hearing be held on the issues raised by Metro in accordance with the provisions of that statute. To hold otherwise would be to allow a subsequent transferee to avoid the public scrutiny to which the original licensee or permittee was subjected in the original requisite public hearing, thus subverting the La. R.S. 27:2 mandate established by the legislature "to protect the general welfare of the state's people by keeping the state free from criminal and corrupt elements."[16]
The Board asserts that if a public hearing is required when any proposed decision is disputed or contested, its functioning will be greatly hampered. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. As we find La. R.S. 27:25(B)(1) clear and unambiguous, and subject to application as written, the Board's remedy to its disinclination in holding hearings in this regard lies with the legislature.

CONCLUSION
The numerous lawsuits generated by what is primarily a business dispute between Metro and Hilton have been made much more complex by the convoluted statutes this court has here interpreted. The legislature continues to pass statutes for administrative agencies which link those agency's adjudicatory powers to the LAPA, without understanding that appeals under the LAPA are a limited form of review, because, under the LAPA, appeals[17] are provided only in cases of "adjudications." "Adjudications" are defined, under LAPA by reference to the definition of "decisions or orders." The latter terms are not used in the generic sense of the words, but are themselves limited to constitutional claims (deprivation of property rights by government action) or actions which the legislature has itself designated can only be taken by the agencies after a hearing on the record with notice. This strict limitation on the meaning of "adjudications" was first given by this court in First National Bank of Abbeville v. Sehrt, 246 So.2d 382 (La.App. 1 Cir.), writs refused, 258 La. 909, 248 So.2d 334 (1971), and later by the supreme court in Delta Bank. If the legislature wants to give broad judicial oversight to administrative agency actions, it must accordingly broaden the definition of "adjudications" in the APA or insert into the statutes of the agencies those type of actions which should, in its opinion, only be made on the record and after notice. In the twenty years since Delta Bank, this is the first *1205 case in which this court has found a statute which requires, before an agency can act, a hearing on the record after notice, contained within the statutes of the agency. Whether the legislature intended close judicial scrutiny of the Board, or intended to give the gaming industry more rights than is usually afforded to regulated parties, cannot be exactly determined from the statutes. The failure to fully integrate and clarify the older statutes wherein the legislature combined the various gaming authorities into one board shows a rush to judgment or a desire to an end without much consideration for the details. Title 27 still contains many conflicts, not addressed by this opinion, which will continue to plague both the agency and the courts.
For the reasons assigned herein, we vacate the decision of the Nineteenth Judicial District Court, dismiss Metro's appeal, grant the application for supervisory review, vacate the December 29, 1998 resolution of the Louisiana Gaming Control Board, and remand the matter to the Louisiana Gaming Control Board for a hearing in accordance with La. R.S. 27:25, after the transferee has filed its application and been investigated by the Louisiana State Police. All costs of this review, in the amount of $3,409.28, shall be borne by the Louisiana Gaming Control Board.
DISTRICT COURT DECISION VACATED; APPEAL DISMISSED; WRIT GRANTED AND MADE PEREMPTORY; BOARD RESOLUTION VACATED; REMANDED.
FITZSIMMONS, J., concurs, and assigns reasons.
WEIMER, J., concurs in part and assigns reasons.
PETTIGREW, J., and CARTER, C.J., concurs in part and dissents in part and assigns reasons.
FOGG, J., concurs in part and dissents in part and adopts Judge PETTIGREW's reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I respectfully concur. I agree with much of what Judge Gonzales and Judge Weimer have written. I also agree with the remand for an adjudicatory hearing on the transfer of interests in a company that owns a substantial interest in a license holder. My reasons for these actions differ somewhat from the other judges.
La. R.S. 27:26 provides the time delay for appeals from decisions of the Louisiana Gaming Control Board. In contrast, La. R.S. 27:89 provides that "[a]ny person adversely affected by an action, order, or decision of the commission may appeal...."[1] Although Section 89 appeals must be pursued "in accordance with the provisions of the Administrative Procedures Act," the scope of appeals allowed by section 89 is alarmingly broader than section 26 decision appeals. This dichotomy may have been inadvertently created when the legislative scheme was revised in 1996. However, the statute remains "on the books," and must be given credence. "The legislature is presumed to have acted with deliberation, knowledge of the effect of its acts, and with a purpose in view, and that the provisions of an act were formulated in harmony therewith." State, Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Com'n, 655 So.2d 292, 303 (La.1995).
In this particular case, I believe that this court has the duty to raise the constitutionality of La. R.S. 27:89. Separation of powers is a fundamental tenant of our system of government. In my opinion, by allowing appellate review of any "action" of the Board, no matter how minor or at what *1206 stage, the legislature violated the constitutional mandate of separation of powers. The legislative grant to the district court usurps the Board's executive power and authority. By allowing appeals of any "action," brought by "[a]ny person adversely affected," the legislature has given the district court the authority to micro-manage and regulate the entire gaming industry. To maintain the requisite separation of powers, gaming appeals must be limited to Board decisions and orders that are final. Thus, I would find unconstitutional the provision in Section 89 that allows appeals of any non-adjudicatory "action, order, or decision" by the Board.
In the matter before us, Metro is a "person" that has been "adversely affected." La. R.S. 27:89. Metro has standing to bring an appeal of a final decision, action, or order of the Board. The financial interests owned by Hilton Hotels Corporation (Bally's Louisiana, Inc.) and transferred to Park Place Entertainment Corporation represented a substitution of Hilton's/Bally's ownership in an existing license holder, the Belle of Orleans, L.L.C. To avoid improper manipulation of the rules for transfer of corporate or company securities, any transfer of gaming interests, with a substantial stake in a license holder, must be handled as a licensing procedure and subjected to an adjudicatory hearing. See La. R.S. 27:68, La. R.S. 27:73, & La. R.S. 27:25. There must be an evidentiary record to review on appeal. Such an adversarial hearing, complete with any testimony if desired, results in a record. It is that record that constitutes the matter of an appeal.
However, the present so-called "appeal" is premature. It did not emanate from a full hearing. Thus, this is an unconstitutional "appeal" by an aggrieved party of an interlocutory "action" by the Board. Additionally, since the Board did not have a full adjudicatory hearing, and produced no record for appeal, there was nothing for the district court to review. For these reasons, we must vacate the ruling of the district court; suspend and stay the "action" of the Board, and remand the matter for a full hearing.
WEIMER, J., concurring in part with the majority opinion written by Judge Gonzales.
This matter is not properly before this court for consideration and was not properly before the district court.
Given the unique posture in which this matter presents itself to this court, which involved an appeal of a resolution passed by the Louisiana Gaming Control Board at a public meeting, I would dismiss the appeal. Based upon our supervisory jurisdiction, and for the reasons cited herein, I would vacate the ruling of the district court.
Louisiana Revised Statutes 27:26 provides that "[a]ll appeals from any decision of the board shall be filed within ten days of notice of the decision in the Nineteenth Judicial District Court and shall be reviewed solely on the record." (Emphasis added.) The decision and record contemplated by this provision is a decision and record made after a "public hearing," in the form of an adjudicatory hearing, held pursuant to LSA-R.S. 27:25.[1] Louisiana Revised Statutes 27:26 follows LSA-R.S. 27:25 sequentially and obviously refers to an appeal to the Nineteenth Judicial District Court "solely on the record" of a "decision" made by the board. An appeal to the Nineteenth Judicial District Court can be taken after the board has in turn heard an appeal from a decision of the hearing officer following an adjudicatory hearing. See LSA-R.S. 27:26 and 27:25.
*1207 Because this appeal is not of a "decision" made "solely on the record" of an adjudicatory hearing, I would decline to hear the appeal. Neither this court not the district court has a proper record to review. The Louisiana Gaming Control Board held a public meeting (as opposed to a public or adjudicatory hearing) at which a resolution was passed. There was no record from which an appeal could be taken; there was no evidence submitted; there were no witnesses sworn. After an appeal was taken to the Nineteenth Judicial District Court, an attempt was made by Metro to create a record before the district court. However, the district court was sitting as an appellate court and was not authorized to accept evidence. Thus, any attempt to introduce evidence at the lower court level, while the district court sat as an appellate court, was improper.[2]
The result is the same when LSA-R.S. 27:89 is considered.[3] Because LSA-R.S. 27:89 references the Administrative Procedure Act, only decisions made following an adjudicatory hearing, where a proper record is made, can be appealed to the Nineteenth Judicial District. Furthermore, reading LSA-R.S. 27:25 and 27:89 together,[4] it is clear that appeals shall be "solely on the record" after an adjudicatory hearing.
There is no recognized legal right to take a direct appeal to the Nineteenth Judicial District from a resolution enacted by the Louisiana Gaming Control Board. Absent a specific right to appeal a resolution, and due to the absence of a proper record, I would dismiss the appeal. See LSA-C.C.P. art. 2162.[5] As stated in Lamana v. LeBlanc, 558 So.2d 685, 688 (La. App. 1 Cir.1990), "An appellate court may dismiss an appeal on its own motion where there is no right to appeal." (Citation omitted.)
To allow an appeal of a resolution by the Louisiana Gaming Control Board, as Metro attempts to accomplish here, would put the Nineteenth Judicial District Court in the untenable, and probably unconstitutional,[6] position of reviewing each and every action of the board without a proper record to review. Only when a proper record is created following an adjudicatory hearing can the Nineteenth Judicial District Court, sitting as an appellate court, and this court, perform the appellate court *1208 function of reviewing a "decision" "solely on the record" "after hearing." See LSA-R.S. 27:26 and LSA-C.C.P. art. 2083.
In sum, because there was no adjudicatory hearing, there is no "decision" to be reviewed "solely on the record" by either the district court or this court. Consequently, I believe we are obligated to dismiss this matter because there is no decision or record for us to review. For the same reasons, I believe we are obligated to vacate the ruling of the district court.
I would dismiss the appeal and vacate the judgment of the lower court.
PETTIGREW, J., concurring in part, and dissenting in part.
In an application for rehearing, the Louisiana Gaming Control Board ("Board") requested that the original opinion written by a three-judge panel of this court be reconsidered and the judgment of the trial court reversed.
In our original opinion, Metro Riverboat Associates, Inc. v. The Louisiana Gaming Control Board, 99-0863 (La.App. 1 Cir. 5/12/00), 761 So.2d 694, we applied La. R.S. 49:964 of the Louisiana Administrative Procedures Act ("APA"). We concluded that Metro Riverboat Associates, Inc. ("Metro") was a party aggrieved by a final decision or order in an adjudication proceeding as required by the statute and, therefore, had standing to appeal the action of the Board. I am of the opinion that this was error on the court's part. Metro's standing and right to appeal the action of the Board is more properly analyzed under the Louisiana Gaming Control Law, La. R.S. 27:1 et seq.
In determining the applicability of laws, the more specific governs over the more general. State In the Interest of A.C., 93-1125, p. 16 (La.1/27/94), 643 So.2d 719, 730, cert. denied, 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995). The provisions of the APA were not intended to supercede specific provisions of other administrative acts, statutes, or to supercede the rights and remedies created under those acts. Rather, it was intended to create procedures in those instances where none existed. Corbello v. Sutton, 446 So.2d 301, 303 (La.1984). Where agency laws are silent, it is the function of the APA to fill in the gaps and to provide rules for procedure. See Liberty Mutual Insurance Company v. Louisiana Insurance Rating Commission, 96-0793, p. 9 (La.App. 1 Cir. 2/14/97), 696 So.2d 1021, 1027.
Louisiana Revised Statute 27:89 provides for judicial review of decisions, orders, and actions of the Board as follows: "Any person adversely affected by an action, order, or decision of the [Board] may appeal to the Nineteenth Judicial District Court...." This provision is broader than La. R.S. 49:964, which requires that a person be aggrieved by a final decision or order in an adjudication proceeding before seeking judicial review. The more specific law, La. R.S. 27:89, governs appeals in gaming cases. Clearly, Metro is a party adversely affected by an action, order, or decision of the Board, and thus, it can seek judicial review under this statute.[1]
As set forth in La. R.S. 27:15 B(5), the Board's responsibilities include the duty to "[o]rganize and conduct hearings, as provided in R.S. 27:25." Louisiana Revised Statute 27:25 B(1) provides, in pertinent part, "[a]ny matter which is disputed or contested shall be heard by a hearing officer." In the instant case, Metro advised the Board that it disputed the issuance of the conditional approval of a transfer of an interest in the license and requested a hearing on the matter. Yet, in derogation of La. R.S. 27:25 B(1), the Board did not conduct a hearing. Metro was entitled to a hearing before a hearing officer as provided for in La. R.S. 27:25 B(1), and it is *1209 my opinion they were entitled to appeal this denial by the Board.
Unlike the majority, I do not believe it was necessary for this court to address the constitutional issue regarding separation of powers. I also disagree with the majority that an appeal can only be taken from a final decision from the Board. As set forth in La. R.S. 27:89, "Any person adversely affected by an action, order, or decision of the [Board] may appeal to the Nineteenth Judicial District Court...." This specific statute, by its very terms, is broader than the right of appeal under the APA. Therefore, I respectfully dissent from the majority's decision that the trial court was without authority to review the matter on appeal.
I do agree with the majority concerning the legal issues of the conditional approval and hearing requirement. I therefore agree that the December 29, 1998 resolution, whereby the Board conditionally approved the transfer of an interest in a riverboat gaming license to entities that had not yet applied for a license or obtained approval from the Louisiana Riverboat Gaming Enforcement Division of the Office of State Police, should be vacated and the case remanded to the Board for a hearing before a hearing officer, in accordance with La. R.S. 27:25 B(1). However, I would accomplish this by affirming the trial court decision and remanding the case for a hearing, rather than vacating the district court's judgment, dismissing the appeal, and granting the application for supervisory review.
CARTER, C.J., Concurring in Part and Dissenting in Part.
I agree that the December 29, 1998 resolution whereby the Gaming Board conditionally approved the transfer of an interest in a riverboat gaming license to entities that had not yet applied for a license or been found suitable under the Louisiana Riverboat Economic Development and Gaming Control Act should be vacated and the case remanded to the Board for a hearing before a hearing officer in accordance with La. R.S. 27:25 B(1). However, I would accomplish this by affirming the trial court decision and remanding the case rather than vacating the district court judgment, dismissing the appeal and granting the writ.
NOTES
[1] Hilton Hotels Corporation (Hilton) was the applicant before the Board as the parent corporation of Bally's Louisiana. Inc. (Bally's), Metro's co-owner in Belle; we refer to Hilton and its affiliates herein collectively as "Hilton."
[2] The Board presented the following assignments of error in its appeal to this court:

1. The district court erred in hearing the matter styled as an "appeal" from a resolution of the [Board] conditionally approving a transaction or transfer of interest.
2. The district court erred in vacating the December 29, 1998 resolution of the [Board] and decreeing it to be of no force and effect.
3. The district court erred in ordering the [Board] to determine whether the spin-off and merger (transaction), should be approved at a public hearing, rather than at a public meeting of the Board.
[3] Metro appealed from the Board's resolution to the district court under the provisions of the Gaming Law, La. R.S. 27:89 which allows an appeal by "[a]ny person adversely affected" by the Board's action, order or decision. Metro alleges that the Board's conditional approval allowing the transfer of interest from its co-owner in Belle to another entity adversely affects its financial interest in the operation of Belle, as well as its stability as a licensee, should the transferee be found unsuitable. We agree that Metro has standing to seek review under La. R.S. 27:89. Further, with regard to the Board's standing to seek review of the district court ruling in this matter, we note that although La. R.S. 49:964 was amended by 1999 La. Acts No. 1332, § 1, to add paragraph (A)(2), which provides that "[n]o agency or official thereof, or other person acting on behalf of an agency or official thereof shall be entitled to judicial review under this Chapter," the wording of La. R.S. 27:89 likewise is broad enough to authorize the Board to seek appellate review.
[4] Dispositions which are required by the constitution are usually those property rights protected by Article I, Sec. 2 and Sec. 4 of the Louisiana Constitution and similar provisions of the United States Constitution. Other agency dispositions may involve other protected rights, such as liberty interests. This reference to a "disposition that is required by constitution" is simply a reference to state actions governed by due process requirements.
[5] The LAPA itself excepts certain agencies from the application of some or all of its provisions: Board of Tax Appeals, Department of Revenue (but not Louisiana Tax Commission), Louisiana Employment Security Law Administrator, Civil Service Commission, Public Service Commission, Pilotage Fee Commission, Office of Conservation, Department of Wildlife and Fisheries, and the Wildlife and Fisheries Commission. La. R.S. 49:967. The Department of Public Safety and Corrections has been found to be excepted, as to review of prisoner disciplinary actions under the Corrections Administrative Remedy Procedure (CARP), La. R.S. 15:1171 et seq., by this court in Victorian v. Stadler, 99-2260, p. 5 (La.App. 1 Cir. 7/14/00), 770 So.2d 382, 384. In Hayden v. New Orleans Baton Rouge Steamship Pilots Fee Commission, 97-1239 (La.1/21/98); 707 So.2d 3, 10-11 the supreme court ruled that the New Orleans and Baton Rouge Steamship Pilots Fee Commission is not bound to comply with the LAPA. In Smith v. Dunn, 263 La. 599, 268 So.2d 670, 671-672 (1972), the supreme court excepted the Board of Parole from application of the LAPA.
[6] Although La. R.S. 27:89 refers to the "commission," which was the Riverboat Gaming Commission, La. R.S. 27:31 transfers all powers, duties, functions, and responsibilities of the various regulatory entities to the Board and states that "[a]ny reference in rules, laws, and documents to or any designation by any law or contract or other document of any entity whose functions are transferred to the board shall be deemed to refer to the board...." La. R.S. 27:31(B), (C).
[7] A judgment that determines the merits in whole or in part is a final judgment, while a judgment that does not determine the merits, but only preliminary matters in the course of the action, is an interlocutory judgment. La. C.C.P. art. 1841.
[8] Although the constitutionality of a statute generally should be raised by the parties in the trial court, a court can reach the constitutional question on its own motion when its jurisdiction is affected. State v. Brewster, 00-1266, p. 3 (La.6/30/00), 764 So.2d 945, 946. See also Istre v. Meche, 00-1316, p. 15 (La.10/17/00), 770 So.2d 776, 778; Vallo v. Gayle Oil Company Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864-865 n. 9. In this case, we note there was no "trial" in which to raise the constitutionality issue; the ruling appealed originated in the administrative agency, and the district court was sitting as an appellate court. Additionally, La. R.S. 13:4448 requires that before a court adjudicates the constitutionality of a statute, it must notify the attorney general of the proceeding and afford him an opportunity to be heard; however, the attorney general represents the Board and has filed a brief in this matter. Moreover, our holding herein construes the statutes at issue in a constitutional manner.
[9] La. R.S. 27:26 was enacted by 1996 La. Acts, 1st Ex.Sess., No. 7, effective May 1, 1996. La. R.S. 27:89 was originally enacted as La. R.S. 4:548 by 1991 La. Acts, No. 753, effective July 18, 1991, and redesignated as La. R.S. 27:89 by 1996 La. Acts, 1st Ex.Sess., No. 7, effective May 1, 1996.
[10] Nevertheless, judicial efficiency and the interests of justice may, in some instances, warrant a conversion of a motion for appeal to an application for supervisory relief. See Basco v. Dorthy R. Racine Trucking, Inc., 97-2740 (La.App. 1 Cir. 12/28/98), 725 So.2d 606, 608, writ denied, 99-0263 (La.3/19/99), 740 So.2d 119; Succession of Brantley, 96-1307 (La. App. 1 Cir. 6/20/97), 697 So.2d 16, 18-19. See also Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
[11] The granting of a writ of review brings the entire case before the reviewing court. Daily Advertiser, 612 So.2d at 15; Broussard v. National Food Stores of Louisiana, Inc., 258 La. 493, 246 So.2d 838, 839 (1971).
[12] Although these regulations refer to the "division," which was the Riverboat Gaming Enforcement Division, La. R.S. 27:31 transfers all powers, duties, functions, and responsibilities of the various regulatory entities to the Board and states that "[a]ny reference in rules, laws, and documents to or any designation by any law or contract or other document of any entity whose functions are transferred to the board shall be deemed to refer to the board...." La. R.S. 27:31(B), (C).
[13] This procedure is denominated an "emergency" procedure and is utilized in situations where: (1) the licensee, permittee or person who was required to meet the qualification requirements and suitability requirements of the act has died or has been declared legally incompetent; (2) the licensee, permittee or person who was required to meet the qualification requirements and suitability requirements of the act is a legal entity that has been dissolved by operation of law; (3) the licensee, permittee or person who was required to meet the qualification requirements and suitability requirements of the act has filed a petition of bankruptcy, or in the opinion of the division is or will likely become insolvent; (4) the license or permit has been suspended or revoked; (5) a person with an interest in a licensee or permittee who was required to meet the qualification requirements and suitability requirements of the act no longer meets the qualification requirements and suitability requirements of the act; or (6) a licensee, permittee, or person who was required to meet the qualification requirements and suitability requirements of the act or an interest in a licensee or permittee is subject to foreclosure or other forced sale permitted by law. 42 La. Admin. Code, Part XIII, § 2513(B). A proposed transferee who seeks to participate in an operation pursuant to the emergency provisions must submit a written request to the division which complies with the specific and detailed disclosure requirements of 42 La. Admin. Code, Part XIII, § 2515. The division has the authority to waive the requirements of 42 La. Admin. Code, Part XIII, § 2515 pursuant to paragraph (B) of that provision, upon written request of the proposed transferee and with a showing of good cause. An emergency approval is referred to as an "Order for Emergency Participation." See 42 La. Admin. Code, Part XIII, § 2515(B).
[14] While La. R.S. 27:25(B)(1) refers to a "public hearing," subsections (B)(1) and (B)(2) clearly indicate that the type of hearing envisioned is an adjudicatory hearing. Many agencies engage in public hearings, either because they are required to do so by statute, by rule, or simply because it is a democratic and useful way to function. These public hearings are generally not recorded, although some are, but they are almost never in an adversarial setting. Witnesses are not sworn and cross examined (but sometimes are), and lawyers do not have the opportunity to call witnesses of their choice. Although public hearings take many forms, they are clearly distinguishable from adjudicatory hearings, which are more like trials before the administrative agencies. In an adjudicatory hearing, there is nearly always a record made, a notice of the purpose of the hearing is given in advance, and parties are authorized to call witnesses and cross examine them.
[15] Either party to such hearing may appeal the decision of the hearing officer to the Board. La. R.S. 27:25(E).
[16] We make no inference but simply quote the language of the statute.
[17] Parties before administrative agencies still have access to courts under the Code of Civil Procedure's actions for injunction, mandamus, declaratory judgments and other causes, where the facts and circumstances of the matter justify such.
[1] The commission referred to in La. R.S. 27:89, was replaced by the Gaming Control Board. See La.R.S. 27:31.
[1] Louisiana Revised Statutes 27:25 provides for the establishment of the Louisiana Gaming Control Board Hearing Office and its duties. The "public hearing" referenced in LSA-R.S. 27:25(B) is an adjudicatory hearing based upon the procedure outlined. Louisiana Revised Statutes 27:25(E) allows for an appeal of the decision of the hearing officer to the board.
[2] The "record" submitted to the district court and to this court for review is inadequate, consisting primarily of a transcript of the public meeting held before the Louisiana Gaming Control Board and various other documents. An appellate court cannot review evidence that is not in the record nor receive evidence so as to supplement the record properly before it. Sutton v. Montegut, 544 So.2d 1181, 1184 (La.App. 5 Cir.1989); Good v. Louisiana Commission on Governmental Ethics, 370 So.2d 123, 125 (La.App. 1 Cir.), writ denied, 371 So.2d 836 (La.1979).
[3] Louisiana Revised Statutes 27:89 provides:

Any person adversely affected by an action, order, or decision of the commission may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act, except that notice of appeal shall be given to the commission and petition for appeal shall be filed with the district court within ten days of the action, order, or decision of the commission.
[4] These provisions address the same subject matter and were enacted together. See Acts 1996, 1st Ex.Sess., No. 7 § 3, eff. May 1, 1996.
[5] Louisiana Code of Civil Procedure article 2162 provides:

An appeal can be dismissed at any time by consent of all parties, or for lack of jurisdiction of the appellate court, or because there is no right to appeal, of if, under the rules of the appellate court, the appeal has been abandoned.
If an appeal is taken to an appellate court which has no jurisdiction over it, the court may transfer the appeal to the proper court, upon such terms and conditions as it may prescribe. If an appeal is transferred to the supreme court in error, the supreme court may transfer or retransfer it to the proper court.
[6] See LSA-Const. art. II, §§ 1 & 2. See also LSA-R.S. 27:15 which establishes the authority of the Louisiana Gaming Control Board to regulate gaming activities and operations.
[1] We also note the provision in La. R.S. 27:26, which provides for appeals from any decision of the Board. Under the facts of this case, regardless of which statute the appeal is taken under, the results are the same.