798 So.2d 132 (2001)
Jack L. BLAIR, DOC # 304924
v.
Richard L. STALDER, Secretary/Department of Public Safety and Corrections, Mary Cockerham, Records Custodian LSP, and Burl Cain, Warden, Louisiana State Prison.
No. 1999 CA 1860.
Court of Appeal of Louisiana, First Circuit.
January 31, 2001.
*133 Jack L. Blair, DOC # 304924, Angola, in Proper Person.
L. Bruce Dodd, Baton Rouge, for Defendants-Appellees Richard L. Stalder, et al.
Before: GONZALES and PETTIGREW, JJ., and CRIGLER,[1] J. Pro Tem.
PETTIGREW, Judge.
In this case, plaintiff appeals from a trial court judgment dismissing his petition for judicial review. For the following reasons, we reverse and render.

FACTS AND PROCEDURAL HISTORY
The plaintiff, Jack L. Blair, is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections ("DOC"). Blair is currently confined at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana, and was confined at LSP at all times relevant to this case. The convictions and sentences at issue in this case are as follows:
1. In July 1988, Blair pled guilty to burglary under docket # 13,188 in Forrest County, Mississippi, and was sentenced to 10 years with the Mississippi Department of Corrections.
2. On November 22, 1991, Blair pled guilty to simple burglary under docket # 11501-91 in the 14th Judicial District Court, Parish of Calcasieu, and was sentenced to a term of 7 years with DOC.

*134 3. On August 10, 1992, Blair pled guilty to attempted first degree murder under docket # CR-4238-91 in the 31st Judicial District Court, Parish of Jefferson Davis, and was sentenced to a term of 3 years with DOC to run concurrently with the 7 year term in Calcasieu Parish.
4. On September 2, 1992, Blair pled guilty to Count 1, armed robbery, and Count 2, second degree kidnapping, under docket # 61785 in the 15th Judicial District Court, Parish of Lafayette. On Count 1, he was sentenced to a term of 20 years to run concurrently with any other sentences he was then serving. On Count 2, he was sentenced to a term of 20 years to run consecutively with the 20-year term on Count 1, but concurrently with any other sentences he was then serving.
Contained in the record is a copy of the note of evidence taken on September 2, 1992, concerning Blair's guilty plea in docket # 61785 and the subsequent Boykinization and sentencing by the trial court. Therein, it is apparent that Blair, his defense counsel, the prosecutor, and the sentencing judge, Honorable Byron Hebert, were all in agreement as to the stipulated sentence that Blair would be subjected to in connection with his guilty plea to armed robbery and second degree kidnapping. The following portions of the transcript are particularly enlightening in this regard:
BY THE COURT:
Q. Let me sentence youthis would be countthere's two (2) counts. This is count one (1). Under count one (1), armed robbery, I hereby sentence you to serve twenty (20) years at hard labor in the custody of the Department of Corrections, without the benefit of parole, probation or suspension of sentence. This sentence is to be concurrent with any other charges the defendant is presently serving, except count two (2) of this docket number 61785.
[BY THE DEFENDANT:]
A. Right.
Q. Under count two (2) the Court hereby sentences you to serve twenty (20) years at hard labor, to be consecutive to the sentence imposed on count one (1) of this docket. Two (2) years to be without benefit of parole, probation or suspension of sentence. This sentence is to be concurrent with any other charges the defendant is presently serving, except count one (1) of this docket.
. . . .
BY MR. STANSBURY [Prosecutor]: For the record, the State has agreed that these sentencesI think that's what the Court sentenced Mr. Blair to, are concurrent with any existing sentences, would have nothing to do with any future sentences.
. . . .
BY MR. SALOOM [Defense Counsel]: Your Honor, I've explained to Mr. Blair that the concurrent, and the State agrees that the concurrent part of the sentence means any sentence he's currently serving. There's a sentence serving in Mississippi and Lake Charles and any other ones that he is currently serving and it does not apply to anything he may get in the future. [Emphasis added.]
While serving his time at LSP, Blair received information that led him to believe that DOC was erroneously calculating his time in violation of the plea agreement that he had entered into on September 2, 1992. An evidentiary hearing was conducted on October 19, 1995, before Judge Hebert, to address Blair's concerns regarding the alleged erroneous computations. After hearing arguments from both *135 the State and Blair, who was unrepresented at the time, Judge Hebert clarified for the record that the two 20-year sentences Blair received in docket # 61785 were to run consecutively to each other but concurrently with the other sentences Blair was serving. The judge then stated that although these sentences were to run concurrently with the other sentences, it was "up to the Department of Corrections to apply the proper credits." Judge Hebert further noted that he had "imposed the sentence as agreed by the parties."
In an effort to "clarify the minutes," Judge Hebert ordered as follows:
BY THE COURT: In docket number 61875, the defendant is sentenced to twenty (20) years at hard labor in the custody of the Department of Corrections without benefit of parole, probation or suspension of sentence. This sentence is to be concurrent with the sentence imposed in docket number 11501-91 of the Fourteenth Judicial District Court and number 4238-91 docket number, in the Parish of Jeff Davis. The first number was in the Parish of Calcasieu. And concurrent with the sentence imposed in Mississippi.
It is to run consecutive to the sentence imposed in count two.
In count two of this docket, which is 61785, the defendant is sentenced to serve twenty (20) years at hard labor in the custody of the Department of Corrections; two years to be without benefit of probation, parole or suspension of sentence. And this sentence is to run concurrently with the sentence imposed in docket number 11501-91 of the Fourteenth Judicial District Court in Calcasieu Parish and docket number 4238-91 in the Parish of Jeff Davis, and in the State of Mississippi, any sentenceto be concurrent with any charge in the State of Mississippi. We don't have the docket numberto be furnished.
And the Department of Corrections will be sentclarification of the sentence will be mailed to the Department of Corrections for their calculations of credit.
BY THE DEFENDANT: I will receive time off of the second sentence while serving this Calcasieu Parish and Lake Charles?
BY THE COURT: It says it's concurrent with those sentences, but I'm going to leave it up to the Department of Corrections to apply the proper credits. And if you do not get the credits that you think you deserve, you have to file suit against the Department of Corrections.
. . . .
BY THE DEFENDANT: If it's concurrent with those charges, shouldn't that besay I receive time from it? I mean it's obvious that a concurrent sentence is happening at the same time.
BY THE COURT: Right.
BY THE DEFENDANT: Okay. If you sentence me to the second sentence concurrently, sir, I should receive time for it.
BY THE COURT: Right.
BY THE DEFENDANT: Is that correct?
BY THE COURT: I would think you would. I know [the prosecutor] does not think so, but I think you would.
A second evidentiary hearing was held on July 10, 1996, before Judge Hebert.[2] *136 At this hearing, Judge Hebert maintained his earlier position that it was up to DOC to decide what credit Blair should be given. Judge Hebert again recognized that the sentence had been agreed to by the parties. However, when asked to specify a date from which the sentences are to run concurrent in accordance with La.Code Crim. P. art. 883, the following colloquy occurred:
BY THE COURT: Okay. So for the record we will clarify that, that you will be given credit for time served. And it's concurrent from the day that you began serving the sentences in those pending charges. You will be given credit for those times.
In other words, we can't give you credit for time that you haven't yet served in Mississippi.... But the time that you have already served, we will give you credit. It's concurrent, and I will give you credit on each count. Each count will get credit for time served, previously served on those charges that were made concurrent, those three sentences.
BY MR. DANGERFIELD [Defense Counsel]: So that would include the Mississippi sentence for whatever time period he did out of that plus the Calcasieu sentence
BY THE COURT: Right.
BY MR. DANGERFIELD:and the Jeff Davis sentence.
BY THE COURT: Right. He'll be given credit for time served. And the concurrent date would be effective as of those dates.
BY MR. DANGERFIELD: Okay. And I guess for clarification purposes
BY THE COURT: Each count will be given credit for time served. That was his question. They're consecutive, but each count will be given credit for time served, already served on those other charges. [Emphasis added.]
When DOC refused to give Blair the credit for time served that he thought he was entitled to, he instituted Administrative Remedy Procedures ("ARP") No. LSP-98-0498 on January 30, 1998. Blair exhausted his administrative remedies pursuant to La. R.S. 15:1171-15:1177 and was denied relief at all three steps of the ARP. While this ARP was pending, Blair apparently filed a Motion to Correct Illegal Sentence and Specific Enforcement of Plea Agreement in docket # 61785.[3] In an order dated April 20, 1998, Judge Hebert denied Blair's motion but again reiterated that he had previously clarified Blair's sentence at the evidentiary hearing on July 10, 1996.
There are numerous letters in the record indicating that Blair was persistent, but unsuccessful, in his attempts to get DOC to comply with the trial court's orders regarding his sentence. On June 5, 1998, Blair filed a pro se petition for judicial review of ARP No. LSP-98-0498.[4] Subsequently, on July 26, 1998, Blair instituted yet another ARP bearing No. LSP-98-4089 concerning this same issue. He pursued this claim through all three steps of the ARP.[5]
*137 On August 10, 1998, the trial court issued another order regarding Blair's sentence in docket # 61785. While it is unclear from the record what prompted this order, the language contained therein was very specific concerning the credit Blair was to receive for time he had previously served in Mississippi:
IT IS ORDERED, THAT the accused in count 1 (Armed Robbery) in Docket Number 61785 be given credit for time perviously [sic] served on a Mississippi sentence of Miss. Docket Number 13,188. From May 2, 1988 until June 30, 1991, as the court minutes reflect from the amended sentence of July 10, 1996. The accused will be given credit for this time previously served toward count 1 (Armed Robbery) in Docket Number 61785.
Further, IT IS ORDERED, THAT the accused in count 2, (Kid Nap) [sic] in Docket Number 61785, be given credit for time previously served on a Mississippi sentence of Miss. Docket Number 13,188. From May 2, 1988 until June 30, 1991, as the court minutes reflect from the sentence being amended on July 10, 1996.
The above two (2) counts in Docket No: 61785 are consecutive, but each count is to receive credit, (separately) for the time the accused served in the State of Mississippi.
The court finds that the minutes sufficiently reflect that the sentences in Docket Number 61785 (Armed Robbery) count 1, and Kid Nap [sic] count 2, each are to receive credit (separately) and it is ordered that you comply with same.
Each sentence was imposed as a stipulated sentence and amended on July 10, 1996 and all in accordance with the Law. [Emphasis added.]
Blair's petition for judicial review of ARP No. LSP-98-0498 proceeded to hearing before Commissioner Allen J. Bergeron, Jr. on January 4, 1999. The matter was argued and submitted by the parties. On January 27, 1999, Commissioner Bergeron issued his recommendation that Blair's suit be dismissed without prejudice. Commissioner Bergeron noted as follows:
As I have stated the record is insufficient for me to make a recommendation in favor of Mr. Blair. Mr. Blair may in fact have received the necessary confirmation from the sentencing Court in its most recent hearing, but he has not presented to this Court nor to the Department of Corrections evidence which would support his claim. Neither does a reading of the multiple, partial transcripts[6] clearly support Mr. Blair's argument. Those portions which might lend support are in the form of general discussion rather than specific orders or directives of the court.
As a consequence it is my recommendation that Mr. Blair's suit be dismissed at his costs. However, because the issue at hand involves a length of a prisoner's term within the custody of the Department of Corrections, it is my opinion that the suit should be dismissed without prejudice, permitting Mr. Blair upon the [sic] to present appropriate documentation to support his claim to the Department of Corrections and seek a correction of his sentence. By these means Mr. Blair may establish the authority *138 for the additional credits which this record fails to establish.
In response to Commissioner Bergeron's recommendation, Blair filed a very lengthy objection with the court. Blair argued that Commissioner Bergeron was "confused" with the "body of evidence and records" he (Blair) had produced. Blair attached various documents and transcripts in an effort to "erase any confusion and to provide [the] Court with sufficient and necessary proof of the erroneous conduct by the defendants in [not] complying with lawful orders of the courts on how the sentences are to run and credits awarded." On February 26, 1999, the trial court rendered judgment dismissing Blair's suit without prejudice as recommended by Commissioner Bergeron. It is from this judgment that Blair has appealed assigning the following specifications of error:
I. THE DISTRICT COURT ERRED WHEN IT DENIED RELIEF ABSENT CONSIDERATION OF EVIDENCE IN THE RECORD MATERIAL TO PROPER ADJUDICATION OF FACTS AND LAW ON ISSUES.
II. THE DISTRICT COURT ERRED WHEN IT RULED THAT THE LA. DOC DOES NOT HAVE A DUTY TO CARRY OUT A SENTENCE AS IMPOSED BY THE SENTENCING COURT.
III. PLAINTIFF'S DUE PROCESS RIGHT IS BEING VIOLATED WHERE THE LA. D.O.C. REFUSES TO CARRY OUT HIS SENTENCE AS IMPOSED BY THE TRIAL COURT, PURSUANT TO A SPECIFIC PLEA AGREEMENT.

DISCUSSION
In brief to this court, Blair argues that the trial court erred in failing to consider Judge Hebert's sentencing orders regarding the specific manner in which his sentences were to be carried out by DOC. Blair asserts that DOC had a duty to carry out his sentence as imposed by Judge Hebert. He further contends that because he was sentenced pursuant to a specific plea agreement, he has been denied due process of law by DOC's failure to comply with Judge Hebert's orders.[7]
In Rochon v. Whitley, 96-0835 (La.App. 1 Cir. 2/14/97), 691 So.2d 189, this court addressed the appropriate standard of review to be applied in these types of cases.
LSA-R.S. 15:1171-1177 provide the statutory authority for the administrative review procedure established and followed by the penal institution in this case. This procedure is designed to receive, hear, and dispose of "any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof ..." and includes appeals of disciplinary actions. LSA-R.S. 15:1171(B). Judicial review of an adverse decision is available pursuant to LSA-R.S. 15:1177, which specifies the manner of review shall be as provided by LSA-R.S. 49:964.

*139 LSA-R.S. 49:964(F) states the judicial review shall be confined to the record, as developed by the administrative proceedings. The court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) manifestly erroneous. LSA-R.S. 49:964(G); Pacificorp Capital, Inc. v. State Through Div. of Admin., 92-1729, p. 4-5 (La.App. 1st Cir.8/11/94), 647 So.2d 1122, 1125, writ denied, 94-2315 (La.11/18/94), 646 So.2d 387.
The manifest error test is used in reviewing the facts as found by the administrative tribunal; the arbitrary and capricious test is used in reviewing the administrative tribunal's conclusions and its exercise of discretion. Save Ourselves, Inc. v. La. Environmental Control Commission, 452 So.2d 1152, 1159 (La.1984).
Rochon, 96-0835 at 4-5, 691 So.2d at 192.
Thus, when reviewing an administrative final decision in an adjudication proceeding, the trial court functions as an appellate court. Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121, p. 5 (La.App. 1 Cir. 2/20/98), 710 So.2d 799, 803, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51. Once a final judgment is rendered by the trial court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Eicher, 97-0121 at 5 n.5, 710 So.2d at 803 n. 5. With these principles in mind, we have thoroughly reviewed the entire administrative record in the instant case and find that the trial court erred in dismissing Blair's suit.
It is well settled that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant's custodian. The custodian's obligation is to see that the sentence imposed is the sentence served. State ex rel. Pierre v. Maggio, 445 So.2d 425, 426 (La.1984). Thus, DOC is charged with the responsibility of complying with any conditions placed on a sentence by the trial judge.
In the instant case, the transcripts from the various evidentiary hearings and the orders rendered by Judge Hebert on April 20 and August 10, 1998, were very specific as to the sentence imposed for Blair's guilty plea to armed robbery and second degree kidnapping in docket # 61785.[8] Judge Hebert, the prosecutors, and Blair were all in agreement that Blair was to receive two 20-year sentences that were to be consecutive with each other, but concurrent with any other sentences that Blair was then serving so that each *140 count in docket # 61785 was to be given credit for time previously served on Blair's other sentences. Judge Hebert clearly stated that the two 20-year sentences were to run concurrently with the sentences that Blair was serving in docket # 11501-91 and # 4238-91.
Based on our review of this record, we find that the evidence clearly supports Blair's position that DOC is not complying with the sentencing orders imposed by Judge Hebert. According to the record, DOC should calculate Blair's sentences as follows. As to the 20-year sentence in Count 1, docket # 61785, Blair is to receive credit for the time he served on docket # 13,188 in Forrest County, Mississippi (i.e., 3 years and 2 months). The balance on Count 1, 16 years and 10 months, is to run concurrently with the sentences in docket # 11501-91 and docket # 4238-91, which sentences were expressly ordered to run concurrently with each other and concurrently with the sentences in docket # 61785.
With regard to the 20-year sentence in Count 2, docket # 61785, Blair is to receive credit for the time he served on docket # 13,188 in Forrest County, Mississippi (i.e., 3 years and 2 months), thus leaving him with a balance on Count 2 of 16 years and 10 months. As per the agreement of the parties, this sentence is to run consecutive to the 20-year sentence in Count 1. Thus, after Blair has served his time on Count 1, he will be left with the balance of the sentence in Count 2, less credit for the time he has actually served on the concurrent sentences in docket # 11501-91 and docket # 4238-91.
The judgment of the trial court dismissing Blair's suit is hereby reversed. DOC is ordered to comply with Judge Hebert's sentencing orders and the orders of this court. Having found merit in Blair's first two assignments of error, we pretermit consideration of Blair's final assignment regarding the alleged violation of his right to due process.

CONCLUSION
For the above and foregoing reasons, we reverse the trial court's judgment and render judgment ordering DOC to comply with the sentencing conditions imposed in this case by Judge Hebert. Further, within 60 days of the rendition of this opinion, DOC is ordered to file written proof in the record of these proceedings that it has complied with this court's ruling and that Blair has been notified of same. Costs associated with this appeal in the amount of $1,673.64 are assessed to defendants-appellees.
REVERSED AND RENDERED.
GONZALES, J., concurred and assigns reasons.
GONZALES, J., concurring.
I concur because this matter involves a liberty interest and the result reached by the majority is equitable. I agree the lower appellate court (the Nineteenth Judicial District Court) erred in its interpretation of the legal ramifications of Blair's claim. However, as will be discussed later, I do not believe this court has appellate jurisdiction, and I would reach the result reached by the majority by converting this appeal into an application for supervisory relief and granting same.
The majority opinion correctly points out that the trial court in this matter functioned as an appellate court, citing Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121 (La. App. 1 Cir. 2/20/98), 710 So.2d 799, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51. The majority opinion also cites Rochon v. Whitley, 96-0835 (La.App. 1 Cir. 2/14/97), 691 So.2d 189, which interpreted La. R.S. *141 15:1177 as it existed at that time. In 1997, apparently at the request of the DOC, the Legislature amended both CARP and the APA. The appellate section of CARP, La. R.S. 15:1177, was amended to remove the reference to the APA.1997 La. Acts No. 1216. Louisiana Revised Statute 15:1177 was revised to incorporate many of the same provisions that existed in the appellate section of the APA, La. R.S. 49:964. See Victorian v. Stalder, 99-2260 (La.App. 1 Cir. 7/14/00), 770 So.2d 382, 387 (Gonzales, J., concurring.)
Act No. 1216 of 1997 further amended the APA to exclude the applicability of the judicial review provisions of the APA to actions filed under CARP, by amending La. R.S. 49:964(A) to provides, "Except as provided in 15:1171 through 15:1177, a person aggrieved by a final decision or order... is entitled to judicial review." This, along with the language in CARP, denominating it as the exclusive remedy, was interpreted in Victorian v. Stalder. The sum and substance of these legislative changes and the opinion in Victorian v. Stalder[1] mean that the APA no longer applies to review of any prisoner suits, which now must be filed under CARP.
The APA contains a provision authorizing an appeal of an appeal. That is La. R.S. 49:965,[2] which is the section relied on in Eicher v. Louisiana State Police, River-boat Gaming Enforcement Division, and cited in the majority opinion. What Act 1216 of 1997 failed to do, when it opted CARP out of the APA, was to incorporate into CARP a provision similar to La. R.S. 49:965, authorizing an appeal of an appeal.
Therefore, there is no appellate authority to appeal from the district court, the first level of appellate review, to this court as a matter of right. The Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division case relied on by the majority, applies only to agencies governed by the APA. The Rochon v. Whitley case, cited by the majority, relies on statutes which have been amended to remove the APA from CARP.
We have the authority to dismiss, on our own motion, matters over which we do not have subject matter jurisdiction. See Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 99-0863 (La. App. 1 Cir. 12/20/00), 774 So.2d 1193. (on rehearing)[3]
*142 However, as we did on rehearing in Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, it is sometimes better to exercise our supervisory jurisdiction to resolve difficult procedural and jurisdictional problems.[4]
The defendant DOC has not filed a motion to dismiss in this case, nor do they file such motions in similar cases. They are apparently unaware of the ramifications of Act No. 1216 of 1997. We note they did not even file a brief in opposition to this appeal.
I am not certain that a majority of this court agrees with my jurisdictional analysis.[5] However, there are no cases interpreting the absence of a second right of appellate review since CARP was amended by Act No. 1216 of 1997.[6] It is clear, *143 however, from Victorian v. Stalder and the Act itself, that the legislature intended to remove prisoner suits filed with the DOC from the appellate provisions of the APA.[7] In doing so, the legislature also removed the double appeal right that was formerly available under the APA for this type of prisoner suit.
NOTES
[1] Judge John D. Crigler is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] According to Blair, the trial court's October 19, 1995 judgment was reversed by the third circuit court of appeal because Blair was not represented by counsel at the initial hearing. This is the only explanation in the record as to why there was a second hearing.
[3] Blair's motion is not found within the appellate record but is referenced in the subsequent order issued by the trial court.
[4] We note that Blair had previously filed a petition for judicial review of ARP No. LSP-95-3635 that involved this same issue. Blair's petition was considered and ultimately dismissed with prejudice by the trial court on July 24, 1996.
[5] While the responses to the first and second steps of this ARP are contained in the record, there is no indication in the record as to DOC's response to the third step.
[6] At first glance, the transcripts referred to by Commissioner Bergeron appear to be only partial transcripts from the three pertinent hearings in this matter. Upon closer examination, however, we note that the transcripts, while not in numerical order, are in fact complete for each of the hearings.
[7] As correctly noted by Blair in brief, "[f]ailure to carry out the sentence as agreed in a plea bargain agreement renders that bargain null and void, and provides lawful grounds for vacation of the plea itself." It is well settled in Louisiana jurisprudence that a guilty plea is constitutionally infirm when a defendant is induced to enter that plea by a plea bargain or by what he justifiably believes was a plea bargain, and that bargain is not kept. In such a case, a defendant has been denied due process of law because the plea was not given freely and knowingly. State v. Dixon, 449 So.2d 463, 464 (La.1984); State v. West, 97-1638, p. 3 (La.App. 1 Cir. 5/15/98), 713 So.2d 693, 695.
[8] As we previously noted, the transcripts as they appeared in the record at the time of the initial hearing in this matter were complete. Further, the orders rendered by Judge Hebert on April 20 and August 11, 1998, were filed into the record on April 23 and August 11, 1998, respectively, well in advance of the hearing on January 4, 1999. Apparently, these transcripts and orders were overlooked by Commissioner Bergeron and the trial court in their consideration of Blair's petition for judicial review. This oversight resulted in what we believe to be an erroneous decision by the trial court to dismiss Blair's suit.
[1] Although the particular matter under review in Victorian v. Stalder was a disciplinary action, the legislative amendment makes CARP the exclusive remedy in prisoner suits and removes all CARP actions from the rules, procedures and guidelines of the APA.
[2] Louisiana Revised Statute 49:965 provides:

An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. The appeal shall be taken as in other civil cases.
[3] As this court stated in Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 99-0863, 774 So.2d at 1195:

As in any case before this court, the first issue that must be considered is whether the case is properly before the court and whether there is a basis for jurisdiction. Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La. C.C.P. art. 1. Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties or waived; a judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. La. C.C.P. arts. 3 and 925. See also Whittenberg v. Whittenberg, 97-1424 (La.App. 1 Cir. 4/8/98), 710 So.2d 1157, 1158; Johnson v. Vinson Guard Service, Inc., 577 So.2d 56, 58 (La.App. 1 Cir.1990), writ denied, 578 So.2d 915 (La.1991). This issue addresses the court's authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. Whittenberg, 710 So.2d at 1158; Tran v. Schwegmann's Giant Super Market, 609 So.2d 887, 889 (La.App. 4 Cir.1992). See also Gravois v. Travelers Indemnity Company, 173 So.2d 550, 553 (La. App. 1 Cir.), writ denied, 247 La. 1016, 175 So.2d 301 (1965). Moreover, it is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. Renno v. Evans, 580 So.2d 945, 947 (La.App. 2 Cir.1991). Therefore, we must nevertheless examine subject matter jurisdiction. See also Boeing Company v. Louisiana Department of Economic Development, 94-0971 (La.App. 1 Cir. 6/23/95), 657 So.2d 652, 659.
[4] See In re Shintech, 98-2024 (La.App. 1 Cir. 3/31/99), 734 So.2d 772, 774, writ denied, 99-1262 (La.6/25/99), 746 So.2d 601. We stated in Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 774 So.2d at 1198, "While a remand for exercise of the district court's supervisory jurisdiction is proper, we choose instead to accept this case under our supervisory jurisdiction. We now consider the merits of the case based on the record filed with the court." The granting of a writ of review brings the entire case before the reviewing court. Daily Advertiser v. Trans-La, a Division of Atmos Energy Corp., 612 So.2d 7, 15, n. 14 (La.1993); Broussard v. National Food Stores of Louisiana, Inc., 258 La. 493, 246 So.2d 838, 839 (1971).
[5] Some judges of this court have observed that we have always handled these types of appeals. This was the correct procedure for cases prior to the 1997 amendments to La. R.S. 15:1177 and La. R.S. 49:964. Since the amendments, which removed the availability of an appeal through the APA, there have been no cases in which this issue has been raised. As noted, the DOC has not even raised the issue here by a motion to dismiss.
[6] The only case addressing the issue of second appeal or the appellate court's jurisdiction since the adoption of the Louisiana Constitution of 1974 is Touchette v. City of Rayne, 321 So.2d 62 (La.App. 3d Cir.1975). Although the operative facts in Touchette occurred under the Louisiana Constitution of 1921, the decision itself was rendered in October of 1975. It is clear that the Touchette opinion, although it notes the constitutional change, decides the case under the Louisiana Constitution of 1921, because it follows Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (La.1971). The Touchette court states, "The Trosclair decision (that the appellate court cannot hear appeals from the district court when the district court sits as an appellate court) is no longer the law. Instead, the solution in Bowen, supra, is binding. The judicial review of an administrative decision is essentially a different process than the appellate review of a district court's judgment. This court therefore has appellate jurisdiction." This apparently means that since the lower court was acting as a court of original jurisdiction, there was appellate jurisdiction in the court of appeal. Why the Touchette court did not apply and interpret the Louisiana Constitution of 1974, which allows the lower court to act as an appellate court, is unknown; however, it was not clearly explained by the Louisiana Supreme Court until 1987 in Loop, Inc. v. Collector of Revenue, 523 So.2d 201, 203 (La. 1987), wherein that court made it clear that "Generally, a court's review of an administrative tribunal's action is considered functionally to be an exercise of its appellate review jurisdiction." Therefore, Touchette v. City of Rayne, like Bowen v. Doyal, addressed jurisdictional questions based on the Louisiana Constitution of 1921.
[7] The APA itself excepts certain agencies from the application of some or all of its provisions: Board of Tax Appeals, Department of Revenue (but not Louisiana Tax Commission), Louisiana Employment Security Law Administrator, Civil Service Commission, Public Service Commission, Pilotage Fee Commission, Department of Conservation, Department of Wildlife and Fisheries, and the Wildlife and Fisheries Commission. La. R.S. 49:967. The Department of Public Safety and Corrections has been found to be excepted, as to review of prisoner disciplinary actions under CARP, by this court in Victorian v. Stalder. In Hayden v. New Orleans Baton Rouge Steamship Pilots Fee Commission, 97-1239 (La.1/21/98), 707 So.2d 3, 10-11, the supreme court ruled that the New Orleans and Baton Rouge Steamship Pilots Fee Commission is not bound to comply with the APA. In Smith v. Dunn, 263 La. 599, 268 So.2d 670, 671-672 (1972), the Louisiana Supreme Court excepted the Board of Parole from application of the APA. The statutes of other agencies, and case law, may limit the applicability of the APA to other state agencies as well.