GUIDRY, J.
12Michael Hampton, a felon convicted of armed robbery, who was freed from his initial term of incarceration on good time release, but later violated the conditions of his release and was re-incarcerated, appeals a judgment of the district court that affirmed the decision of the Louisiana Department of Public Safety and Corrections (“DPSC”) denying his administrative remedy request (“ARP”). For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 18, 1994, Mr. Hampton was sentenced to 20 years imprisonment for the crime of armed robbery. On September 2, 1994, Mr. Hampton signed a “Good Time Rate Option and Approval Form,” wherein, in lieu of incentive wages, he agreed “to receive good time at the rate of thirty days for every thirty days in actual custody pursuant to La. R.S. 15:571.3.” Pursuant to his election to receive good time, Mr. Hampton was approved to become eligible to receive good time at the rate of thirty days for every thirty days in actual custody effective March 18, 1994. As a result of his election to receive good time, Mr. Hampton was released from prison on good time supervised parole on June 7, 2003.
In December 2007, Mr. Hampton committed the crimes of simple burglary and attempted simple burglary. He was arrested on December 29, 2007, but allowed to bond out of jail on January 6, 2008. Then on January 13, 2010, he was arrested by officers with the Baton Rouge Police Department, again for the offense of simple burglary. Following that arrest, a parole hold was placed on Mr. Hampton on January 25, 2010. Thereafter, a “Notice of Preliminary Hearing” was provided to Mr. Hampton for violating the terms of his good time release. On May 25, 2010, Mr. Hampton waived his right to a preliminary hearing and final parole revocation hearing and pled guilty to all parole violations. Hence, Mr. Hampton’s good time release was revoked, effective May 25,2010.
laOn October 13, 2010, Mr. Hampton pled guilty to the December 2007 charges of simple burglary and attempted simple burglary and was sentenced to eight and six years imprisonment, respectively, with the sentences to run concurrent with the 20-year sentence Mr. Hampton was serving for armed robbery.
At some point during his re-incarceration, Mr. Hampton’s parole eligibility was marked as “D” rather than “N” on his armed robbery sentence.[1] However, on being transferred to the Phelps Reentry Program at Angola State Penitentiary, Mr. Hampton’s master prison record was corrected to reflect that he was not parole eligible.
On November 15, 2012, Mr. Hampton filed ARP No. CPCC-2012-0413, in which he complained about his parole eligibility status being changed from being at the discretion of the parole board to his not being eligible for parole. He further complained about an alleged addition of one month and 16 days to his sentence. After Mr. Hampton’s ARP was rejected at both steps of the DPSC’s administrative review, he filed a petition for judicial review of the denial of his complaints asserted in ARP No. CPCC-2012-0413 on June 11, 2013.[2]
*396 A commissioner with the Nineteenth Judicial District Court[3] held a hearing on Mr, Hampton’s petition for judicial review on April 10, 2015, at which time Mr. Hampton appeared in proper person, having again been freed on good time release. On the date of the hearing, but prior to the actual hearing, Mr. Hampton filed a motion for subpoena duces tecum and a motion to amend his petition for judicial review to add a personal injury claim.
|4At the hearing, Mr. Hampton argued that pursuant to La. R.S. 15:574.9(F), the parole board had the authority to reinstate his release on good time supervised parole, and that before his transfer to the Phelps Reentry Program at Angola, his master prison record reflected his parole eligibility as being “D.S.C.B.” or at the “discretion of the board.” He further contended that prior to his good time release, he served one-half of his armed robbery sentence, ten years. In particular, he asserted that he was released from the Hunt Correctional Center on June 7, 2003, after accruing nine years and “some months, and days,” but on leaving Hunt, he was transferred to a Blue Walters program and then to the City of Faith Halfway House in Monroe, Louisiana. Thus, he argued that he had served a complete ten years before being freed on good time release.
The DPSC argued that any reference that may have appeared on Mr. Hampton’s master prison record indicating that he was parole eligible was simply an error that was later noticed and corrected. The DPSC further denied that an additional month and sixteen days was added to Mr. Hampton’s armed robbery sentence. According to the agency’s records, Mr. Hampton only served nine years, ten months, and 15 days before he was freed on good time release.
During the hearing, the commissioner advised Mr. Hampton that she found his parole eligibility argument to be moot, since he had been freed again on good time release. She further advised him that she would recommend that his motions for subpoena duces tecum and to amend his petition for judicial review be denied. As for the time-served calculations, the commissioner directed the DPSC to supplement the record with missing portions of Mr. Hampton’s master prison record for her to review. After the record was supplemented, the commissioner issued a report to the district court recommending that the decision of the DPSC (denying Mr. Hampton’s complaints under ARP No. CPCC-2012-0413) be affirmed, that Mr. Hampton’s petition be dismissed with prejudice, and that the | ^motions Mr. Hampton filed on April 9, 2015 (the date of the hearing before the commissioner), be denied. The district court signed a judgment consistent with the commissioner’s recommendations on November 10, 2015, which judgment Mr. Hampton appeals herein.
DISCUSSION
The first issue presented by Mr. Hampton in this appeal[4] concerns whether *397 the DPSC’s modification of his master prison record, removing the indication that he was parole eligible, was improper.
Louisiana Revised Statute 14:64(B) provides that whoever commits the crime of armed robbery shall be imprisoned at hard labor without the benefit of parole, probation, or suspension of sentence. Moreover, it has been held that the determination of the sentence a defendant is to serve, and what, if any, conditions are to be imposed on that sentence, is made by the trial judge, not the defendant’s custodian. The custodian’s obligation is to see that the sentence imposed is the sentence served. Blair v. Stalder, 99-1860, p. 9 (La.App. 1 Cir. 1/31/01), 798 So.2d 132, 139. Thus, the DPSC is charged with complying with any conditions placed on a sentence by the trial judge. Boddye v. La. Dept. of Corrections, 14-1836, p. 6 (La.App. 1 Cir. 6/26/16), 175 So.3d 437, 441, writ denied, 15-1688 (La. 10/30/15), 180 So.3d 303.
Mr. Hampton does not dispute, and at the hearing before the commissioner, he even acknowledged that he was sentenced to 20 years imprisonment, without the benefit of parole, on his armed robbery offense. So despite the temporary | ^indication otherwise in Mr. Hampton’s master prison record, and despite his actually having been afforded a hearing before the parole board in 2011, these actions by the DPSC cannot override the sentence imposed by the trial judge, which is that Mr. Hampton’s armed robbery sentence was to be served without the benefit of parole. Hence, as the DPSC is charged with complying with any conditions placed on a sentence by the trial judge, we find no error in the district court’s determination that the DPSC acted properly in correcting Mr. Hampton’s master prison record to reflect that Mr. Hampton’s armed robbery sentence was to be served without the benefit of parole, as imposed by the trial judge.
The remaining issue raised by Mr. Hampton on appeal is his contention that his master prison record incorrectly indicated that at the time his good time release was revoked, he had ten years, one month, and 16 days left to serve of his 20-year sentence. We find no merit to this argument.
At the time Mr. Hampton committed the offense of armed robbery,[5] La. R.S. 15:571.3(B)(1)[6] provided, in pertinent part:
Every inmate in the custody of the department who has been convicted of a felony and sentenced to imprisonment for a stated number of years or months may earn, in lieu of incentive wages, a diminution of sentence by good behavior and performance of work or self improvement activities, or both, to be known as “good time”.The amount of diminution of sentence allowed under the provisions of this Section shall be at the rate of thirty days for every thirty days in actual custody, including time spent in custody with good behavior pri- or to sentence for which defendant is *398 given credit. Under the provisions of this Section, no inmate shall receive more than thirty days of good time or thirty days of jail credit for any calendar month while serving a term for consecutive sentences.
Moreover, La. R.S. 15:571.5 provided, in pertinent part:
|7B. (1) Before any prisoner is released on parole upon diminution of sentence, he shall be issued a certificate of parole that enumerates the conditions of parole. These conditions shall be explained to the prisoner and the prisoner shall agree in writing to such conditions prior to his release on parole,
(2) The person released because of diminution of sentence pursuant to this Part shall be supervised in the same manner and to the same extent as if he were released on parole. The supervision shall be for the remainder of the original full term of sentence. If a person released because of diminution of sentence pursuant to this Part violates a condition imposed by the parole board, the board shall proceed in the same manner as it would to revoke parole to determine if the release upon diminution of sentence should be revoked.
C. If such person’s parole is revoked by the parole board for violation of the terms of parole, the person shall be recommitted to the department for the remainder of the original full term. [Emphasis added.]
Prior to being freed on good time release, Mr. Hampton’s master prison record reflected a full-term release date of July 23, 2013, which was exactly 20 years from July 23,1993, the date Mr. Hampton started serving jail time for the armed robbery offense. Further, the diminution of sentence release form signed by Mr. Hampton upon being freed on good time release recited that Mr. Hampton was to “remain within the limits of the Baton Rouge District until July 23,2013.”
The jail time served by Mr. Hampton from March 18, 1994 (the date he was sentenced on the armed robbery offense), to June 7, 2003 (the date he was originally freed on good time release), was a total of nine years, two months, and twenty days. Mr. Hampton also accrued 238 days of jail credit because he remained incarcerated from the time he was arrested on the armed robbery offense to the time he was sentenced (July 23, 1993 to March 18, 1994). Thus, the total amount of time Mr. Hampton was actually imprisoned relative to the armed robbery offense was nine years, ten months, and 15 days (July 23, 1993 to June 7, 2003). However, during that same period of incarceration, Mr. Hampton earned certain educational credits, which accounted for him being released on' June 7, 2003. Otherwise, diminution of Mr. Hampton’s sentence strictly based on | ^accruing good time at the rate of thirty days for every thirty days spent in actual custody would have resulted in his not being released until July 23,2003.
Thus, as a result of the additional educational good time credits that Mr. Hampton earned, he was released on diminution of sentence before having fully served one-half of his sentence in actual custody. Nevertheless, this early release in no way impacted or changed Mr. Hampton’s original full term release date. Instead, as provided in La. R.S. 15:571.4(B)(2), “[a]n inmate who has been returned to the custody of the department because of a violation of the terms of parole granted by the committee on parole shall forfeit all good time earned or credits toward the reduction of the projected good time parole supervision date on that portion of the sentence served prior to the granting of parole.” So, as a consequence of Mr. Hampton violating the terms of his good time release, he forfeited *399 not only the good time he had accrued for every thirty days he had spent in actual custody, he forfeited the educational good time credits he had accrued as well. And as prior to his good time release, Mr. Hampton had only served nine years, ten months, and 15 days in actual custody, we find the district court did not err in affirming the DPSC’s determination that Mr. Hampton had ten years, one month, and 16 days remaining to be served on the original full term of his sentence.
CONCLUSION
For the foregoing reasons, we find the DPSC properly dismissed Mr. Hampton’s complaints regarding his parole eligibility and time-served calculations. Thus, we affirm the judgment of the district court. All costs of this appeal are cast to the appellant, Michael Hampton.
AFFIRMED.

. Based on the testimony presented at the hearing on judicial review, it is presumed that "D" stands for "discretion of the parole board” and "N” for "not eligible.”

. Although the petitioner named several other persons associated with the DPSC as defendants in his petition for judicial review, the only proper party defendant is the DPSC, *396 unless the matter involves a tort claim. See La. R.S. 15:1177(A)(1)(b).

. See La. R.S. 13:711 and 713.

. We observe that Mr. Hampton presents several assignments of error and arguments that are beyond the scope of the two issues expressly raised in the ARP that is the subject of this appeal. As a general matter, appellate courts will not consider issues raised for the first time, which are not pled in the court below and which the district court has not addressed. Council of City of New Orleans v. Washington, 09-1067, p. 3 (La. 5/29/09), 9 So.3d 854, 856. And while Mr. Hampton did attempt to raise these additional issues below, the district court properly did not consider them, as the district court's judicial review is limited to the issues presented in the petition *397 for review and the administrative remedy request filed at the agency level. See La. R.S. 15:1177(A)(5).

. It has been held that the good time provisions that were in effect at the time of the commission of the offense govern good time credit eligibility, consistent with the general principle that the law in effect at the time of the commission of an offense is determinative of the penalty that an accused must suffer. See Massey v. Louisiana Department of Public Safety & Corrections, 13-2789 (La. 10/15/14), 149 So.3d 780.

. This version of La. R.S, 15:571.3, which was enacted pursuant 1991 La. Acts, No. 138, is commonly referred to as simply "Act 138.” See Massey, 13-2789 at p. 2, 149 So.3d at 782.